❏ Original          ❏ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>A dark blue 2014 Mercedes-Benz E-Class sedan bearing<br>Montana License Plate DPK-137, currently located at<br>Gessler's Towing, 21289 Good Hope Road, Lannon, WI<br>53046, further described in Attachment A-2 | )<br>)<br>)  Case No. 25-906M(NJ)<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B-2

**YOU ARE COMMANDED** to execute this warrant on or before   5/29/2025 _____   *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m.      ❏ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Nancy Joseph_____.
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❏ for _____ days *(not to exceed 30)*    ❏ until, the facts justifying, the later specific date of _____.

Date and time issued:   5/15/2025 @ 2:49 p.m.            *Nancy Joseph*
                                                                    *Judge's signature*

City and state:   Milwaukee, WI                         Nancy Joseph, U.S. Magistrate Judge
                                                              *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A-2**

**DESCRIPTION OF VEHICLE TO BE SEARCHED**

The dark blue 2014 Mercedes-Benz E-Class sedan bearing Montana license plate DPK-137 (the "**Subject Vehicle**"). The **Subject Vehicle** is a dark blue sedan with four doors and chrome accents. The **Subject Vehicle** has "E 350" in chrome on the rear. The subject vehicle is currently located at Gessler's Towing, 21289 Good Hope Road, Lannon, WI 53046.  A photo of the **Subject Vehicle** is below:



**ATTACHMENT B-2**

**LIST OF ITEMS TO BE SEIZED – SUBJECT VEHICLE**

Evidence of a crime, instrumentalities, and contraband concerning violations of Title 18, United States Code, Sections 2422, 2251, and 2252 and 2252A (the "**Subject Offenses**"), as follows:

1.      Documents in any format and medium pertaining to the production or possession of child pornography as defined in 18 U.S.C. § 2256(8).

2.      Firearms found to be in the **Subject Vehicle** including, but not limited to, a silver pistol with tan handle.

3.      Underwear reasonably believed to be connected to the **Subject Offenses** and other articles of clothing, reasonably believed to be owned by Victim A.

4.      Any substance, which could reasonably be utilized to temporarily incapacitate or alter the memory of another person.

5.      Computers, tablets, removable media, electronic gaming devices, media players, computer hardware, computer software, and video display monitors that, based on their location, appearance, and/or other information learned at the time of the execution of the warrant are reasonably believed to be connected to the **Subject Offenses**. This includes, but is not limited to, materials used to: visually depict child pornography as defined in 18 U.S.C. § 2256(8); display or access information pertaining to child pornography; display or access information pertaining to sexual activity with children; communicate with children; or advertise, distribute, possess, or receive child pornography, or otherwise access to transmit information pertaining to child pornography or other sexual activity with children.

6.     Phones or electronic devices that, based on their location, appearance, and/or other information learned at the time of the execution of the warrant are reasonably believed to be connected to the **Subject Offenses**.

7.     Any passwords, encryption keys, and other devices that may be necessary to access any electronic equipment described above.

8.     Any items demonstrating the presence or absence of computer software that would allow others to control any electronic equipment, and the presence or absence of security software designed to detect such malicious software.

9.     Any items demonstrating the attachment of other computer hardware or storage media.

10.     Any counter-forensic programs and associated data that are designed to conceal or eliminate data.

11.     Any computer software, including programs to run operating systems, applications (such as word processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs.

12.     Items in any format and medium containing names, addresses, and/or other contact information of individuals who may have been contacted by Eldine **TECHEIRA** by use of the computer or by other means concerning the coercion and enticement of minors to engage in illegal sexual activity and the production and possession child pornography, as defined in 18 U.S.C. § 2256(8).

13.     Any items in any format or medium of child pornography as defined in 18 U.S.C. § 2256(8); visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C.

§ 2256(2), or of child erotica; of items pertaining to the enticement of minors to engage in illegal sexual activity; or of items evincing the **Subject Offenses** or otherwise relating to the sexual exploitation or abuse of children.

14. Any items identifying persons engaged in the coercion or enticement of an individual to engage in criminal sexual activity or transmitting child pornography, as it is defined in 18 U.S.C. § 2256(8), or any visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

15. Any items concerning communications between individuals about child pornography or the existence of sites on the Internet that contain child pornography or that cater to those with an interest in child pornography.

16. Any items concerning membership in online groups, clubs, or services that make accessible child pornography to members.

17. Any items that concern any accounts with Mobile Phone Providers or Internet Service Providers, including but not limited to sales receipts, bills, and notes.

18. Documents, in any format or medium, pertaining to occupancy or ownership of the **Subject Vehicle**.

19. Any items in any format or medium of child pornography as defined in 18 U.S.C. § 2256(8), or visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2), or of child erotica, or of items evincing the **Subject Offenses** or otherwise relating to the sexual exploitation or abuse of children.

20. Items in the above paragraphs that are stored in computer media, including media capable of being read by a computer (such as external and internal hard drives, memory sticks and

thumb drives), and electronic devices such as computers, cellular phones, tablets, video display monitors, and other devices capable of storing digital images or accessing the internet, shall be searched in accordance with the attached Addendum.   In executing this search warrant, law enforcement will seize computer media and electronic devices that, based on their location, appearance, and/or other information learned at the time of the execution of the warrant, are reasonably believed by law enforcement to belong to or have been used by Eldine **TECHEIRA**, or to otherwise be linked to the **Subject Offenses**.

## ADDENDUM TO ATTACHMENT B-2

Pursuant to Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, this warrant authorizes the removal of electronic storage media and copying of electronically stored information, including cell phones, that are described in Attachment B-2 and/or found in the vehicle described in Attachment A-2 so that they may be reviewed in a secure environment for information consistent with the warrant. That review shall be conducted pursuant to the following protocol:

Subject to the exceptions to the warrant requirement as recognized by law, the government may search only those electronic storage media that fall within the criteria as described in Attachment B-2, which may either be all electronic storage media found in the premises or only a subset of the electronic storage media found in the premises.

The government's review of removed electronic storage media shall be conducted pursuant to the following protocol:

The government must make reasonable efforts to use methods and procedures that will locate those categories of data, files, documents, or other electronically stored information that are identified in the warrant, while minimizing exposure or examination of categories that will not reveal the items to be seized in Attachment B-2.

The review of electronically stored information and electronic storage media removed from the vehicle described in Attachment A-2 may include the below techniques. These techniques are a non-exclusive list, and the government may use other procedures if those procedures are designed to minimize the review of information not within the list of items to be seized as set forth in Attachment B-2:

a. examination of categories of data contained in such computer hardware, computer software, and/or memory storage devices to determine whether that data falls within the items to be seized as set forth in Attachment B-2;

b. searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth in Attachment B-2;

c. surveying various file directories and folders to determine whether they include data falling within the list of items to be seized as set forth in Attachment B-2;

d. opening or reading portions of files, and performing key word or concept searches of files, in order to determine whether their contents fall within the items to be seized as set forth in Attachment B-2; and

e. using forensic tools to locate data falling within the list of items to be seized as set forth in Attachment B-2.

Law enforcement personnel are not authorized to conduct additional searches for any information beyond the scope of the items to be seized by this warrant as set forth in Attachment B-2. To the extent that evidence of crimes not within the scope of this warrant appears in plain view during the government's review, the government shall submit a new search warrant application seeking authority to expand the scope of the search prior to searching portions of that data or other item that is not within the scope of the warrant. However, the government may continue its search of that same data or other item if it also contains evidence of crimes within the scope of this warrant.

The government will return any electronic storage media removed from the vehicle described in Attachment A-2 within 60 days of the removal unless, pursuant to Rule 41(c)(2) or (3) of the Federal Rules of Criminal Procedure, the removed electronic storage media contains contraband or constitutes an instrumentality of crime, or unless otherwise ordered by the Court.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>A dark blue 2014 Mercedes-Benz E-Class sedan bearing Montana<br>License Plate DPK-137, currently located at Gessler's Towing, 21289<br>Good Hope Road, Lannon, WI 53046, further described in Attachment A-2 | )<br>)<br>)<br>)<br>)<br>)    Case No. 25-906M(NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-2

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, U.S.C. §§ 2422, 2251,<br>2252 and 2252A | Coercion and Enticement, Production of Child Pornography and Possession of<br>Child Pornography |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Hannah Judd, Special Agent FBI

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means).*

Date: 5/15/2025

*Judge's signature*

City and state: Milwaukee, WI

Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

I, Hannah Judd, being duly sworn, do hereby state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since June 2022. I am presently assigned to the FBI Chicago Field Office, Rockford Resident Agency. Prior to becoming a Special Agent, I was employed by the FBI since 2014 in support positions.

2. As part of my duties as an FBI Special Agent, I investigate federal criminal violations relating to the sexual exploitation of children, including violations related to possession, receipt, and distribution of child pornography, travel with intent to engage in illicit sexual conduct, and coercion and enticement, in violation of Title 18 U.S.C. § 2251, 2251(a), 2252, 2252A, 2423(b), and 2422. Additionally, prior to becoming a Special Agent, I was a Staff Operations Specialist from approximately April 2017 until June 2022. As part of my duties during that time, I supported FBI Milwaukee's Child Exploitation Task Force, by directly assisting Special Agents in investigating federal criminal violations relating to the sexual exploitation of children through data and communication analysis and social media and open-source research.

3. Throughout my employment with the FBI, I have participated in numerous criminal investigations, many of which involved the use of the Internet, email, and other social media, to further criminal activity. I have received training relating to Internet crimes against children investigations in which computers and other digital media are used as a means to commit criminal violations related to child exploitation and the production and possession of child pornography. Between June 2022 and October 2022, I attended the FBI Academy in Quantico, Virginia, where I received training in a variety of investigative and legal matters, including topics such as Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. I have

participated in the execution of numerous federal search warrants of physical premises, digital devices, and online accounts, including social media applications.

4.     This affidavit is made in support of an application for a warrant to search a black Apple iPhone with the number 350168833580070 printed on the SIM card tray (the "**Subject Phone**"), further described in Attachment A-1, and a dark blue 2014 Mercedes-Benz E-Class sedan bearing Montana license plate DPK-137, described further in Attachment A-2 (the "**Subject Vehicle**"), for evidence of a crime, instrumentalities, and contraband described further in Attachment B, concerning coercion and enticement, in violation of 18 U.S.C. § 2422, possession of child pornography, in violation of 18 U.S.C. §§ 2252 and 2252A, and production of child pornography, in violation of 18 U.S.C. § 2251 (the "**Subject Offenses**").

5.     This affidavit contains summaries of certain social media application conversations. The summaries do not necessarily refer to all of the topics discussed during the conversations, and the summaries do not include every statement made by every speaker on the topics described. With respect to the electronic communications summarized herein, I have reviewed actual chats obtained from the account of one of the two parties to the conversation or directly from the social media company.

6.     The statements in this affidavit are based on my personal knowledge and on information I have received from other law enforcement personnel and from persons with knowledge regarding relevant facts. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are sufficient to establish probable

2

cause to believe that evidence of a crime, instrumentalities, and contraband of violations of the **Subject Offenses** are located on the **Subject Phone** and/or in the **Subject Vehicle.**

## DEFINITIONS

7.  The following definitions apply to the Affidavit and Attachments to this Affidavit:

a.  "Cellular telephone" or "cell phone" means a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books"; sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may include geolocation information indicating where the cell phone was located at particular times.

b.  "Child Pornography" is defined in 18 U.S.C. § 2256(8) as any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the

3

visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

  c. "Computer" is defined in 18 U.S.C § 2256(6) and 18 U.S.C. § 1030(e)(1) as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device."

  d. "Computer hardware" means all equipment which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

  e. "Computer software" is digital information which can be interpreted by a computer and any of its related components to direct the way they work. Computer software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

  f. "Computer-related documentation" consists of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, computer software, or other related items.

4

g.     "Passwords" consist of information or items designed to restrict access to or hide computer software, documentation, or data. A password or pass phrase (a string of alpha-numeric characters) usually operates as a sort of digital key to "unlock" particular data security devices.

h.     "Electronic storage media" includes computers, cellular telephones, tablets, and devices designed specifically to store electronic information (e.g., external hard drives and USB "thumb drives"). Many of these devices also permit users to communicate electronic information through the internet or through the cellular telephone network (e.g., computers, cellular telephones, and tablet devices such as an iPad).

i.     The "Internet" is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

j.     "Internet Service Providers" (ISPs) are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment. ISPs can offer a range of options in providing access to the Internet including broadband based access via digital subscriber line (DSL) or cable television, dedicated circuits, or satellite-based subscription. ISPs typically charge a fee based upon the type of connection and volume of data, called bandwidth, which the connection supports. Many ISPs assign each subscriber an account name – a user name or screen name, an "e-mail address," an e-mail

5

mailbox, and a personal password selected by the subscriber. By using a computer equipped with a modem, the subscriber can establish communication with an Internet Service Provider (ISP) through a cable system or via satellite, and can access the Internet by using his or her account name and personal password.

k.      "An Internet Protocol address" (IP address) is a unique numeric address used by internet-enabled electronic storage devices to access the Internet. An IP address is either a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178) or a series of eight groups of four hexadecimal digits each separated by colons (e.g. 2001:0000:9d38:6ab8:1c48:3a1c:a95a:b1c2). Every electronic storage device attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that electronic storage device may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static, that is, long-term IP addresses, while other computers have dynamic that is, frequently changed IP addresses.

l.      "Minor" means any person under the age of eighteen years. 18 U.S.C. § 2256(1).

m.      The terms "records," "documents," and "materials" include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including writings and drawings), photographic form (including prints, negatives, videotapes, motion pictures, and photocopies), mechanical form (including printing and typing) or electrical, electronic or magnetic form (including tape recordings, compact discs, electronic or magnetic storage devices such as hard disks, CD-ROMs, digital video disks

6

(DVDs), Personal Digital Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, smart cards, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

n.     "Sexually explicit conduct" means actual or simulated (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the anus, the genitals, or pubic area of any person.  18 U.S.C. § 2256(2).

o.     "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.  18 U.S.C. § 2256(5).

## FACTS SUPPORTING PROBABLE CAUSE
## TO SEARCH THE SUBJECT PREMISES

A.     **WINNEBAGO COUNTY SHERIFF'S OFFICE INITIAL INVESTIGATION OVERVIEW**

8.     On March 5, 2025, a minor female ("Victim A"), with a date of birth in 2008, was reported missing from Machesney Park, Illinois by her father to the Winnebago County Sheriff's Office (WCSO).[1]  Victim A's father said Victim A had been missing since March 3, 2025.

9.     Victim A's sister later advised she had accessed Victim A's Snapchat account and found a conversation between Victim A and Snapchat user hdk_karib, who had a display name

---

[1] The Winnebago County Sheriff's Office provides police services to Machesney Park, Illinois.

7

within the Snapchat conversation with Victim A of "School Brother."[2] Victim A's sister advised "School Brother" had the username hdk_karib. The Snapchat profile for hdk_karib had the location Wisconsin in its biographical section.



10.    Within the conversation, hdk_karib discussed meeting Victim A and at approximately 5:17 P.M. on March 3, 2025, hdk_karib sent a screen capture of what appeared to

---

[2] Snapchat users can set the display name for users within specific conversations.

be a map application that showed a route from an area near Milwaukee, Wisconsin to an area near Rockford, Illinois.



11.     On March 6, 2025, Victim A's father contacted law enforcement to advise Victim A had returned to the Machesney Park residence. Other family members at the residence advised law enforcement that Victim A returned at approximately 6:00 A.M. that morning.

12.     Victim A was interviewed by Winnebago County Sheriff's personnel and advised she was with a male she knew as "Eldine," believed to be TECHEIRA (as detailed below).

9

According to Victim A, TECHEIRA picked Victim A up on March 3, 2025 and the two of them drove around the Rockford area in TECHEIRA's dark blue sedan until March 6, 2025 between approximately 5:00 A.M. and 6:00 A.M. Victim A did not disclose sexual contact with TECHEIRA during the initial interview.

13.     Later on March 6, 2025, Victim A's sister brought Victim A to the hospital for a sexual assault examination and stated she had observed "hickeys" (bruises caused by intense suction on the skin, usually from kissing or sucking) on Victim A's breasts.

14.     While at the hospital, Victim A was interviewed by Winnebago County Sheriff's Office personnel. Victim A further identified the individual she was with as "Eldine Techeira," whom she met on TikTok. Victim A and TECHEIRA arranged to meet in person. According to Victim A, TECHEIRA lived in Wisconsin and knew where Victim A lived because Victim A had her location visible on Snapchat.

15.     According to Victim A, TECHEIRA picked her up on March 3, 2025 at approximately 7:00 P.M. in a navy blue 4-door sedan with a tan interior and tinted windows, which is consistent with the **Subject Vehicle**. Victim A believed the vehicle had Minnesota plates but advised that additional license plates were inside the vehicle along with stuffed animals. TECHEIRA gave Victim A a stuffed giraffe, which she had with her at the hospital. Victim A described TECHEIRA as Caribbean Indian with glasses, poufy hair tied into balls, and dark brown eyes. Victim A also believed TECHEIRA had tattoos on both arms, a tattoo on his neck or shoulders, a birth mark on his side, and possibly a scar below his lip.

16.     Victim A again stated she and TECHEIRA drove around the Rockford, Illinois area. At some point, TECHEIRA and Victim A stopped at a gas station and TECHEIRA purchased

10

her a fountain drink. Victim A remembered the drink did not have a lid and that it tasted sweeter than normal. Victim A stated her memory was "foggy" and she did not remember much of what happened. Victim A did remember kissing TECHEIRA and that TECHEIRA had a silver pistol with a tan handle.

17.     The nurse who completed the sexual assault exam advised Winnebago County Sheriff's Office personnel after the exam that based upon her experience, there was some evidence of vaginal penetration.

18.     Victim A participated in a victim sensitive interview at a child advocacy center. During this interview, Victim A provided additional information. TECHEIRA told Victim A he was 19 years old, but Victim A believed he was older than this after meeting in person. According to Victim A, TECHEIRA made Victim A deactivate her location on Snapchat and turn off her phone so she could not be tracked. TECHEIRA showed Victim A the aforementioned pistol. Victim A believed TECHEIRA did this to intimidate her from leaving. After consuming the fountain drink, Victim A "passed out" and upon waking, Victim A was still inside TECHEIRA's vehicle but her underwear was missing.

19.     During a subsequent interview with Winnebago County Sheriff's Office personnel, Victim A stated she told TECHEIRA she was 16 years old. TECHEIRA kissed Victim A's hand and neck and rubbed Victim A's inner thigh. TECHEIRA also attempted to place his hands on Victim A's breasts. According to Victim A, TECHEIRA stated he wanted to have children with Victim A and wanted Victim A to run away with him to a motel in Wisconsin. Victim A observed TECHEIRA had an erection and Victim A stated she would not allow TECHEIRA to have sexual intercourse with her. After waking up, Victim A's pants were wet in the groin area and something

11

white was leaking from her vagina. Victim A stated her vagina area was red, sore, and burning hot, but she did not recalling having sexual intercourse or being video recorded. Victim A stated if she did have sexual intercourse it would have been in the back seat of the vehicle, which had a tan interior.

## B.   STATE OF ILLINOIS SNAPCHAT SEARCH WARRANT RESULTS

20.    Winnebago County Sheriff's Office personnel obtained a State of Illinois search warrant[3] for the Snapchat account hdk_karib. Within the search warrant return, a conversation dated March 3, 2025 with Victim A's Snapchat Account was located.

21.    During the conversation, hdk_karib said "You bout to be my thicky with some hickeys lol." Victim A said "You should just come snatch me from school lol where you live lol" and hdk_karib replied "lol you bout it fr [for real] what the addi [address]…." Hdk_karib also said "Girl, I'm bout to hit you up and be like I'm in Machesney Park. Tell your parents you going for a walk."

22.    Hdk_karib asked if Victim A was single and then discussed spending the night in a hotel with Victim A:

**Hdk_karib**: It's like an hour and a half drive from me shit I don't know you should tell him about the sleepover by your friend on Wednesday and I could pick you up tomorrow night and we spend the night in a hotel if you want.
**Victim A**: No one finds me attractive
**Hdk_karib**: What do you mean I find you attractive that's you in that picture right and I believe that the most attractive thing about a female is the person she actually is
**Victim A**: I can't it's a school night lol
**Victim A**: Awww

---

[3] This warrant was signed by Judge Steven L. Nordquist on March 31, 2025 in Winnebago County (warrant number 25-236).

23.     The conversation continued and hdk_karib stated he wanted Victim A to live with him and that he would get her pregnant within the year:

> **Hdk_karib**: So like if I told you, I ran into some money and I got a place and I want you to move in with me and I'd get you registered in homeschooling and I probably will make you a mama in the next year or so. How do you feel about that?
> …
> **Victim A**: I wouldn't care
> **Victim A**: I've been wanting to k run away for wehul
> **Hdk_karib**: Well, you know where my heads at like I don't lie if you were to fuck with me you'd probably be living with me by the end of the year for real and by this time next year if we still fucking around, probably have a little one on the way lol but that's all depending on you. You know I mean.

24.     Based on my training and experience, hdk_karib implied planned sexual activity with Victim A in the following exchange:

> **Hdk_karib**: You better not flake on me I wanna make you [water droplet emoji] …. Top secret lol
> **Victim A**: Lol
> **Victim A**: I won't baby I promise
> **Victim A**: I love you daddy [giggling emojis]
> **Victim A**: If I do say stop it's probably bc [because] you feel to good bc [because] yk [you know] when I umm touch myself it gets to that point [crying laughing emoji]
> **Victim A**: Lol
> **Hdk_karib**: You love me you turned me on better save that talk for when you see me tonight lol I hope so though
> **Hdk_karib**: Ain't no need when you got my tongue and all my other things yet no

25.     On March 3, 2025 at approximately 4:24 P.M., hdk_karib said "So I know you said he had really wet but about to make your square I'm a call you young fire hose cause you bought that spray all over lol" and corrected "You get **"" and "Squirt **." Hdk_karib said a short time later, "So I'm about to put some hickeys on you, but I'll do it where you can hide them if that's OK" to which Victim A replied "yeah idc [I don't care]." Hdk_karib further said "Yes, of course really about to let you sit on my face…" Hdk_karib also asked "You bout to make me eat you out

13

for like a whole hour lol." Based on my training and experience, I believe these statements further implied hdk_karib's intent to engage in sexual contact with Victim A.

26.     On March 3, 2024 at approximately 5:13 P.M., hdk_karib said "Yeah I'm on my way. I'mma be there like in an hour 30 maybe just a little bit more. I was gonna come earlier but I thought you was gonna flake on me but I'm on my way right now." hdk_karib asked for Victim A's address and Victim A provided it.

27.     Before arriving, hdk_karib asked "You don't got no STD right" to which Victim A replied "I never had sex." Hdk_karib said "that's wassup that's what's up" and "I'm bout to wife you stop playing with me."

28.     Victim A said "You should get me and then bring me to your house and just do I've back out here to rocked to bring me home if you want so we ain't in your car for so long up to you." Hdk_karib said "OK all my car is tented really dark and ion know if you're gonna wanna drive two hours back to my place, but we might just have to telly or something because technically my house is all the way in Minnesota, but I work in Wisconsin[…]." Victim A said "I wanna run away so nad" and "You should just kidnap me and never return me." Hdk_karib said "Well I'm not gonna kidnap you but if you're really serious about that, we'll set up something for real and we could do that soon if you're really serious OK" and "OK, well first thing first is let's not message each other about it. We'll talk about it as soon as we see each other. We can talk about how we're gonna do it and what we're gonna do OK."

29.     At approximately 6:43 P.M., hdk_karib said "I am 16 minutes away, babe." Victim A said a short time later, "I will power my phone off and turn location off so my family ain't know were I am" and "I can't bileave. Your driving so far. To come see me." At approximately 6:58

14

P.M., hdk_karib said he was around the corner and at 7:00 P.M., Victim A said she would start walking.

30.     Throughout the conversation, Victim A made comments that were indicative of being a minor including "I used to be happy until high school," a reference to her dad, and a story about being bullied. Hdk_karib also mentioned the need to homeschool Victim A twice during the conversation, which implied his knowledge of her approximate age.

31.     Within the Snapchat search warrant return, a Snapchat "memory" with the media ID D3DC07EC-69D9-44CD-9F80-A358EE901127 dated March 4, 2025 21:50 UTC was located. The "memory" was an approximately 25-second video of a male vaginally penetrating a female with his penis. The video was closely cropped to the genitalia.  The female appeared to be wearing a black shirt. The "memory" had the GPS location of 42.29018, -89.0737, which is in Rockford, Illinois.

15



32.     Approximately six pictures that included Victim A were located in the "memories" from the Snapchat search warrant return, all of which were dated on March 5, 2025. Some of these pictures also depicted what appeared to be TEHCEIRA. Victim A appeared to be located within a vehicle with a tan interior and was wearing a black shirt. The background of the previously-described 25-second video appeared consistent with this tan interior.

33.     Based upon the above information, the user of Snapchat account hdk_karib, believed to be TECHEIRA as detailed below, traveled from Wisconsin to Illinois after persuading Victim A via interstate means, namely Snapchat, to meet with him in-person for the purposes of illicit sexual conduct and upon meeting in-person created a visual depiction of the sexual conduct,

16

which was stored in the memories of the hdk_karib Snapchat account, and in doing so, committed the **Subject Offenses.**

C.      IDENTIFICATION OF **TECHEIRA** AS THE USER OF SNAPCHAT ACCOUNT **HDK_KARIB** AND ASSOCIATION TO THE **SUBJECT PHONE** AND **SUBJECT VEHICLE**

34.     Victim A's sister identified an Instagram account hd_karib340, which had the display name "Eldine M Techeira Jr," that appeared related to the Snapchat user hdk_karib.

35.     A search of the Wisconsin Circuit Court database for Eldine Techeira revealed an open case for Eldine M Techeira, date of birth 06/28/1990. A search of the Wisconsin Department of Motor Vehicles database revealed a driver's license with a picture that appeared visually similar to the individual observed on the Snapchat profile hdk_karib shown above.



36.     As part of the State of Illinois search warrant return, Snapchat provided subscriber information for hdk_karib, which included the registration phone number 907-759-9563, birth date

17

6/28/1990[4], and home location 43.11428, -88.0559. The home location GPS coordinates resolved to an area in Milwaukee, Wisconsin.



37.     Along with IP data, Snapchat provided user agent strings, which provides information about the device accessing the application including the application version and device information. An example of one of the user agent strings is: Snapchat/13.32.0.49 (iPhone 12, 1; iOS 18.3.1; gzip) grpc-c+ +/1.48.0 grpc-c/26.0.0 (ios; cronet_http). The device identifier in this string is "iPhone 12, 1," which corresponds to the product line of Apple iPhone 11, consistent with the model of the **Subject Phone.**

---

[4] The birth date provided by Snapchat for hdk_karib was the same as TECHEIRA's birth date.

38.     Winnebago County Sheriff's Office personnel also obtained a State of Illinois search warrant[5] for subscriber information, call detail records, and location information for phone number 907-759-9563. AT&T Wireless advised the financially liable party for the phone number was "Highest Deh Karib" with a credit address of 815 Main Street, Bozeman, Montana 59715. AT&T Wireless also provided information that the IMEI in use on the account as of March 15, 2025 was 35016883327642 and the device was an Apple iPhone 11. [6]

39.     A search of a public database for motor vehicles registered to TECHEIRA revealed a 2014 Mercedes-Benz E-Class sedan with a Montana license plate DPK-137, the **Subject Vehicle**.

40.     Montana Motor Vehicle Department records provided the following registration information for the **Subject Vehicle**:

Registered Party: Eldine McChesney Techeira Jr.

Address: 815 E Main Street, Bozeman, Montana 59715

VIN: WDDHF5KBXEB021100

Make: Mercedes-Benz

Model: E

Year: 2014

Color (Primary): Blue

41.     On May 12, 2025, a Waukesha County Sheriff's Office deputy conducted a traffic

---

[5] This warrant was signed by Judge Steven L. Nordquist on April 3, 2025 in Winnebago County (warrant number 25-246).

[6] The IMEI provided by AT&T is not the same number printed on the SIM card tray of the **Subject Phone**. Based on my training and experience, I know it is common for iPhones to have more than one IMEI associated to the device. As detailed below, the **Subject Phone** is an Apple iPhone 11.

19

stop on the **Subject Vehicle** due to a defective passenger side taillight while the **Subject Vehicle** was operating on a roadway in the Eastern District of Wisconsin. The driver and sole occupant of the vehicle was TECHEIRA. TECHEIRA advised the deputy that he lived in the **Subject Vehicle** most of the time and the **Subject Vehicle** contained the majority of his belongings. TECHEIRA was arrested pursuant to a State of Illinois arrest warrant issued in Winnebago County (Illinois) Circuit Court case 25 CF 1020, related to the conduct described in this warrant, and was subsequently transported to the Waukesha County Jail.

42.    Waukesha County Sheriff's Office personnel searched the **Subject Vehicle** after a K-9 alerted on the vehicle. During the search, law enforcement located a loaded 9mm SCCY CPX-1 pistol, baggies containing a green leafy substance, and a tray with a green leafy substance believed to be drug paraphernalia. These items were inventoried and maintained by Waukesha County Sheriff's Office personnel. All other items remained in the **Subject Vehicle**, which was then towed by Gessler's Towing to their lot, which is gated, located within the Eastern District of Wisconsin. Later on May 12, 2025, Waukesha County Sheriff's Office personnel returned to the tow lot to place evidence seals on the doors.

43.    TECHEIRA's personal property was inventory at the Waukesha County Jail upon booking. One of the items was a black Apple iPhone within a case that had a picture of a horror movie doll on the back, the **Subject Phone.** A Waukesha County Sheriff's Office Detective retrieved the **Subject Phone** from TECHEIRA's personal property to maintain as evidence. The Detective also advised the **Subject Phone** had 350168833580070 printed on the SIM card tray.

44.    An open source search for the number printed on the SIM card tray, which is usually one of the device's IMEI numbers, revealed the device was an Apple iPhone 11, the same model

20

identified as in use by AT&T.

45.     According to the Waukesha County Sheriff's Office report, TECHEIRA's phone number was 907-759-9643, the same number associated to the Snapchat account hdk_karib.

**D.     BACKGROUND ON CHILD EXPLOITATION OFFENDERS**

46.     Based upon my own knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, computers affect the methods used by people who possess, receive, distribute, and transport child pornography in these ways.

47.     Those who create child pornography can produce both still and moving images directly from a common video or digital camera, and other devices that create video and still images, including most cellular telephones. Images from such devices can be transferred to a computer by attaching the device to the computer using a cable, or by uploading images from the device's memory card directly onto the computer or into a storage account accessible from any computer with the capability of accessing the internet (sometimes referred to as a "cloud" account). Once on the computer, images can then be stored, manipulated, transferred, or printed. This includes transfer to some of the same types of devices that are commonly used to create child pornography, such as cellular telephones, as well as other computers. As a result of this technology, it is relatively inexpensive and technically easy to produce, store, and distribute child pornography.

48.     The Internet allows any computer to connect to another computer. Electronic contact can be made to millions of computers around the world. The Internet allows users, while still maintaining anonymity, to locate (i) other individuals with similar interests in child pornography; and (ii) websites that offer images of child pornography. Child pornography

21

collectors can use standard Internet connections, such as those provided by businesses, universities, and government agencies, to communicate with each other and to distribute child pornography. They can also distribute and collect child pornography with peer-to-peer ("P2P") file sharing, which uses software to link computers together through the Internet to form a network that allows for the sharing of digital files among users on the network. These communication links allow contacts around the world as easily as calling next door. Additionally, these communications can be quick, relatively secure, and as anonymous as desired. All of these advantages, which promote anonymity for both the distributor and recipient, are well known and are the foundation of transactions between child pornography collectors over the Internet.

49.     The computer's capability to store images in digital form makes it a common repository for child pornography. Internal and external computer hard drives typically store vast amounts of data, and hard drives with the capacity of 500 or more gigabytes – which can store tens of thousands of images at very high resolution – are not uncommon. Other electronic storage media, such as thumb drives and memory sticks, can store hundreds of images and dozens of videos. Likewise, optical storage media, which includes CD-ROMs and DVDs, and electromagnetic storage media, such as floppy disks and SD-cards, also can hold hundreds of images and multiple videos. Such electronic, optical, and electromagnetic storage media are very commonly used by those who collect child pornography to store images and videos depicting children engaged in sexually explicit activity. Agents who execute child pornography search warrants often find electronic, optical, and/or electromagnetic storage media containing child pornography in the same location as or near the device that was used to obtain, access, and/or store child pornography.

22

50. Based on my previous investigative experience related to child pornography investigations, training I have received, and the training and experience of other law enforcement officers with whom I have had discussions, I know there are certain characteristics common to individuals who utilize social networking websites and social media chatting applications in order to access with intent to view and/or produce, possess, receive, or distribute images of child pornography.

51. Based on my training, experience, and the background of this investigation described above, I know the following:

    a. Individuals who demonstrate a sexual interest in minors are likely to utilize the Internet to seek out images and videos depicting children engaged in sexual activity.

    b. These individuals are also likely to utilize the Internet to meet minors on applications (also known as "apps") such as Kik, Discord, Instagram, Snapchat, Reddit, TikTok, etc., and oftentimes engage in the receipt, distribution, and production of child pornography through these apps, both with minors and with adults who have a similar sexual interest in children. Likewise, these individuals may utilize these same apps in furtherance of meeting minors in-person for sexual activity.

    c. Individuals who access with intent to view and/or produce, possess, receive, or distribute child pornography may receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity.

23

d.      Individuals who access with intent to view and/or produce, possess, receive, or distribute child pornography may collect sexually explicit or suggestive materials, in a variety of digital media and electronics, including cell phones, computers, external hard drives, and cloud-based storage services, such as iCloud, Google Drive, Dropbox, and MEGA.

e.      Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

f.      By storing child pornography digitally, users avoid the need to maintain physical copies of the contraband. As detailed above, numerous digital files can be stored on a single device.

g.      By storing child pornography on a cloud-based internet account, users avoid the need to store files on their local computer or cell phone.  However, in order to access these accounts, users must connect to the internet through a device.  The users can access these cloud accounts either via a dedicated application or an internet browser. In either case, evidence of this access will likely remain on their device.  The application may store the username and password for the account.  The users' internet browser history may store the time that the internet browser accessed the cloud service.  The computer or cell phone may store cookies, a small file which stores data for a particular website such as a username.  A computer or cell phone may store temporary internet files, where files such

24

as thumbnail images are saved by the device to allow for these websites to load more quickly the next time they are visited.

h.     Likewise, individuals who access with intent to view and/or produce, possess, receive, or distribute pornography often maintain their child pornography images in a digital or electronic format in a safe, secure and private environment, such as on a cellular phone, computer, and surrounding area.  Images and videos containing child pornography received via email or electronic correspondence may be extracted and saved to portable electronic and digital mediums such as external hard drives, thumb drives, and/or USB flash drives.  These child pornography images and videos may then be deleted from an email or social media account or from a computer, but stored on such external digital devices and are often maintained for several years and are kept close by, usually at the possessor's residence, including storage locations such as garages, or vehicle, to enable the individual to view the child pornography images, which are valued highly.

i.     Individuals who access with intent to view and/or produce, possess, receive, or distribute child pornography also may correspond with and/or meet others to share information and materials, maintain correspondence from other child pornography distributors/possessors, conceal such correspondence as they do their sexually explicit material, and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

52.     My training and experience, and the training and experience of other agents whom I have consulted, have shown the following:

25

a.        Individuals who possess, transport, receive, and/or distribute child pornography often collect sexually explicit materials, which may consist of photographs, magazines, motion pictures, video tapes, books, slides, computer graphics or other images, as well as literature describing sexually explicit activity involving children. Such individuals frequently store their child pornography on multiple electronic, optical, and/or electromagnetic storage media, including not only their computer, but also on external hard drives, SD-cards, floppy disks, CD-ROMs, DVDs, memory sticks, thumb drives, cell phones, and other such media. Many of these individuals also collect child erotica, which consist of items that may not rise to the level of child pornography but which nonetheless serve a sexual purpose involving children.

b.        Individuals who possess, transport, receive, and/or distribute child pornography often seek out like minded individuals, either in person or on the Internet, to share information and trade depictions of child pornography and child erotica. The different Internet based vehicles used by such individuals to communicate with each other include, but are not limited to, P2P, e-mail, e-mail groups, bulletin boards, Internet Relay Chat, newsgroups, instant messaging, and other similar interfaces.

c.        Individuals who possess, transport, receive, and/or distribute child pornography often collect, read, copy, or maintain names, addresses (including e-mail addresses), phone numbers, or lists of persons who have advertised or otherwise made known in publications and on the Internet that they have similar sexual interests. These contacts are maintained as a means of personal referral, exchange, or commercial profit. These names may be maintained in the original medium from which they were derived,

26

in address books or notebooks, on computer storage devices, or merely on scraps of paper.

d.      Individuals who possess, transport, receive, and/or distribute child pornography usually maintain their sexually explicit materials and may go to great lengths to conceal and protect from discovery, theft, and damage their collections of illicit materials. These individuals almost always maintain their collections in the privacy and security of their homes or other secure location such as a vehicle or garage. Similarly, these individuals often retain and store devices no longer in active use in their homes or other secure locations, such as the garage. These individuals may keep their collections in locked containers including filing cabinets, safes, or lockboxes. These individuals may also maintain their collections in password protected or encrypted electronic media. They may keep these passwords, and other information concerning their use of the computer, on handwritten or printed notes that they store in personal areas and around the computer.

e.      Possessors, traders and distributors of child pornography sometimes store their illegal images and videos online in remote storage accounts. Therefore, any records, documents, invoices and materials in any format or medium that concern online storage or other remote computer storage could indicate that a person is storing illegal material in an online storage account.

f.      Files, logs, and records relating to P2P files can contain the names of files sent through the P2P service, as well as the date and time the files were transferred. These records could help identify the individual who transferred the child pornography images. Additionally, these records can provide historical information about the trading of child pornography by individuals.

27

53.     Based upon the aforementioned common characteristics of child exploitation offenders and my training and experience, I know that an individual who has committed the **Subject Offenses** from a certain identified device, such as a cell phone, is likely to maintain evidence of other violations of the **Subject Offenses** on the **Subject Phone** as well as other devices potentially within the **Subject Vehicle.**

## SPECIFICS REGARDING SEARCHES OF ELECTRONIC STORAGE MEDIA

54.     Based upon my training and experience, and the training and experience of specially-trained personnel with whom I have consulted, searches of evidence from electronic storage media commonly require agents to download or copy information from the electronic storage media and their components, or remove most or all electronic storage media items (*e.g.* computer hardware, computer software, computer-related documentation, and cellular telephones) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following:

a.      Electronic storage media can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it with deceptive file names. This requires searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take days or weeks, depending on the volume of data stored, and it would be generally impossible to accomplish this kind of data search on site.

b.      Searching electronic storage media for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to

28

specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of an electronic storage media system is an exacting scientific procedure which is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since electronic storage media evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

55.     In order to fully retrieve data from a computer system, the analyst needs all storage media as well as the computer. In cases involving child pornography where the evidence consists partly of graphics files, the monitor(s) may be essential for a thorough and efficient search due to software and hardware configuration issues. The analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard disk drives or on external media).

56.     In addition, electronic storage media such as a computer, its storage devices, peripherals, and Internet connection interface may be instrumentalities of the crime(s), within the meaning of 18 U.S.C. §§ 2251 through 2256, and are subject to seizure as such if they contain contraband or were used to obtain or store images of child pornography.

## CONCLUSION

57.     Based on the above information, I respectfully submit that there is probable cause to believe that evidence of a crime, instrumentalities, and contraband relating to the **Subject Offenses**, as further described in Attachment B-1 and Attachment B-2, will be found on the

29

**Subject Phone**, as further described in Attachment A-1, and in the **Subject Vehicle**, as further described in Attachment A-2. By affidavit and application, I request that this Court issue a search warrant for the black Apple iPhone with 350168833580070 printed on the SIM card tray, more particularly described in Attachment A-1, authorizing the seizure of items described in Attachment B-1, and the dark blue 2014 Mercedes-Benz E-Class sedan bearing Montana license plate DPK-137, more particularly described in Attachment A-2, authorizing the seizure of items described in Attachment B-2.

58.     The requested warrants also include the authority to search the content of any electronic devices using the search procedure described in the addendum to Attachment B-1 and the addendum to Attachment B-2.

<u>**ATTACHMENT A-2**</u>

**DESCRIPTION OF VEHICLE TO BE SEARCHED**

The dark blue 2014 Mercedes-Benz E-Class sedan bearing Montana license plate DPK-137 (the "**Subject Vehicle**"). The **Subject Vehicle** is a dark blue sedan with four doors and chrome accents. The **Subject Vehicle** has "E 350" in chrome on the rear. The subject vehicle is currently located at Gessler's Towing, 21289 Good Hope Road, Lannon, WI 53046. A photo of the **Subject Vehicle** is below:



## ATTACHMENT B-2

## LIST OF ITEMS TO BE SEIZED – SUBJECT VEHICLE

Evidence of a crime, instrumentalities, and contraband concerning violations of Title 18, United States Code, Sections 2422, 2251, and 2252 and 2252A (the "**Subject Offenses**"), as follows:

1.      Documents in any format and medium pertaining to the production or possession of child pornography as defined in 18 U.S.C. § 2256(8).

2.      Firearms found to be in the **Subject Vehicle** including, but not limited to, a silver pistol with tan handle.

3.      Underwear reasonably believed to be connected to the **Subject Offenses** and other articles of clothing, reasonably believed to be owned by Victim A.

4.      Any substance, which could reasonably be utilized to temporarily incapacitate or alter the memory of another person.

5.      Computers, tablets, removable media, electronic gaming devices, media players, computer hardware, computer software, and video display monitors that, based on their location, appearance, and/or other information learned at the time of the execution of the warrant are reasonably believed to be connected to the **Subject Offenses**. This includes, but is not limited to, materials used to: visually depict child pornography as defined in 18 U.S.C. § 2256(8); display or access information pertaining to child pornography; display or access information pertaining to sexual activity with children; communicate with children; or advertise, distribute, possess, or receive child pornography, or otherwise access to transmit information pertaining to child pornography or other sexual activity with children.

6.     Phones or electronic devices that, based on their location, appearance, and/or other information learned at the time of the execution of the warrant are reasonably believed to be connected to the **Subject Offenses**.

7.     Any passwords, encryption keys, and other devices that may be necessary to access any electronic equipment described above.

8.     Any items demonstrating the presence or absence of computer software that would allow others to control any electronic equipment, and the presence or absence of security software designed to detect such malicious software.

9.     Any items demonstrating the attachment of other computer hardware or storage media.

10.    Any counter-forensic programs and associated data that are designed to conceal or eliminate data.

11.    Any computer software, including programs to run operating systems, applications (such as word processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs.

12.    Items in any format and medium containing names, addresses, and/or other contact information of individuals who may have been contacted by Eldine **TECHEIRA** by use of the computer or by other means concerning the coercion and enticement of minors to engage in illegal sexual activity and the production and possession child pornography, as defined in 18 U.S.C. § 2256(8).

13.    Any items in any format or medium of child pornography as defined in 18 U.S.C. § 2256(8); visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C.

§ 2256(2), or of child erotica; of items pertaining to the enticement of minors to engage in illegal sexual activity; or of items evincing the **Subject Offenses** or otherwise relating to the sexual exploitation or abuse of children.

14. Any items identifying persons engaged in the coercion or enticement of an individual to engage in criminal sexual activity or transmitting child pornography, as it is defined in 18 U.S.C. § 2256(8), or any visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

15. Any items concerning communications between individuals about child pornography or the existence of sites on the Internet that contain child pornography or that cater to those with an interest in child pornography.

16. Any items concerning membership in online groups, clubs, or services that make accessible child pornography to members.

17. Any items that concern any accounts with Mobile Phone Providers or Internet Service Providers, including but not limited to sales receipts, bills, and notes.

18. Documents, in any format or medium, pertaining to occupancy or ownership of the **Subject Vehicle**.

19. Any items in any format or medium of child pornography as defined in 18 U.S.C. § 2256(8), or visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2), or of child erotica, or of items evincing the **Subject Offenses** or otherwise relating to the sexual exploitation or abuse of children.

20. Items in the above paragraphs that are stored in computer media, including media capable of being read by a computer (such as external and internal hard drives, memory sticks and

thumb drives), and electronic devices such as computers, cellular phones, tablets, video display monitors, and other devices capable of storing digital images or accessing the internet, shall be searched in accordance with the attached Addendum. In executing this search warrant, law enforcement will seize computer media and electronic devices that, based on their location, appearance, and/or other information learned at the time of the execution of the warrant, are reasonably believed by law enforcement to belong to or have been used by Eldine **TECHEIRA**, or to otherwise be linked to the **Subject Offenses**.

## ADDENDUM TO ATTACHMENT B-2

Pursuant to Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, this warrant authorizes the removal of electronic storage media and copying of electronically stored information, including cell phones, that are described in Attachment B-2 and/or found in the vehicle described in Attachment A-2 so that they may be reviewed in a secure environment for information consistent with the warrant. That review shall be conducted pursuant to the following protocol:

Subject to the exceptions to the warrant requirement as recognized by law, the government may search only those electronic storage media that fall within the criteria as described in Attachment B-2, which may either be all electronic storage media found in the premises or only a subset of the electronic storage media found in the premises.

The government's review of removed electronic storage media shall be conducted pursuant to the following protocol:

The government must make reasonable efforts to use methods and procedures that will locate those categories of data, files, documents, or other electronically stored information that are identified in the warrant, while minimizing exposure or examination of categories that will not reveal the items to be seized in Attachment B-2.

The review of electronically stored information and electronic storage media removed from the vehicle described in Attachment A-2 may include the below techniques. These techniques are a non-exclusive list, and the government may use other procedures if those procedures are designed to minimize the review of information not within the list of items to be seized as set forth in Attachment B-2:

a. examination of categories of data contained in such computer hardware, computer software, and/or memory storage devices to determine whether that data falls within the items to be seized as set forth in Attachment B-2;

b. searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth in Attachment B-2;

c. surveying various file directories and folders to determine whether they include data falling within the list of items to be seized as set forth in Attachment B-2;

d. opening or reading portions of files, and performing key word or concept searches of files, in order to determine whether their contents fall within the items to be seized as set forth in Attachment B-2; and

e. using forensic tools to locate data falling within the list of items to be seized as set forth in Attachment B-2.

Law enforcement personnel are not authorized to conduct additional searches for any information beyond the scope of the items to be seized by this warrant as set forth in Attachment B-2. To the extent that evidence of crimes not within the scope of this warrant appears in plain view during the government's review, the government shall submit a new search warrant application seeking authority to expand the scope of the search prior to searching portions of that data or other item that is not within the scope of the warrant. However, the government may continue its search of that same data or other item if it also contains evidence of crimes within the scope of this warrant.

The government will return any electronic storage media removed from the vehicle described in Attachment A-2 within 60 days of the removal unless, pursuant to Rule 41(c)(2) or (3) of the Federal Rules of Criminal Procedure, the removed electronic storage media contains contraband or constitutes an instrumentality of crime, or unless otherwise ordered by the Court.